## Royal Arcanum v. Victoria Coverdale et al.

1. BENEFICIARY BENEFIT ASSOCIATIONS—*Waiver of By-Laws by Subordinate Lodges.*—A subordinate lodge of a mutual benefit association has no authority to waive a by-law of the association providing that applications for membership shall not be received from bar-keepers or from persons who at any time sell or serve intoxicating liquors to be drunk on the premises.

2. SAME—*False Representations in Applications Vitiates the Member's*

93 373
r193s 91
93 373
r193s 91

*Certificate.*—Under a by-law of a mutual beneficiary association providing that applications for membership shall not be received from bar-keepers or from persons who sell or serve intoxicating liquors to be drunk on the premises, a false representation in this regard by a person in his application for membership is material and of vital importance, and renders his certificate of membership void.

3.  SAME—*Construction of the Contract of Membership.*—In construing the contract between a member and a beneficiary association, the application, the examination by the physician, the constitution and by-laws and the certificate of membership, are all to be construed together, as the contract between the parties.

**Assumpsit,** on a certificate in a beneficiary association.   Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding.   Heard in this court at the March term, 1900.   Reversed.   Opinion filed March 5, 1901.

**Statement.**—The appellant corporation was organized November 5, 1877, under the laws of Massachusetts, " for the purposes of fraternal union, aid to its members and their dependents, the education—social, moral and intellectual—of its members, assisting widows and orphans of deceased members, and providing for a widows and orphans' benefit fund, and so forth."   At the time of the organization of appellant there was and thence hitherto has been in force the following by-law of appellant:

" Applications shall not be received from bar-keepers or from persons who, at any time, sell or serve intoxicating liquors to be drunk on the premises."

Section 115, chapter 1, article 5 of the constitution of appellant is as follows:

" The constitution of subordinate councils and the general laws of the order may be altered or amended at any regular · meeting of the supreme council, or at a special meeting called for the purpose, by a two-thirds ʼvote of the members present."

Section 8, chapter 4, article 1 of the constitution provides:   " The supreme council shall be composed of its officers, the representatives from grand councils, and all past supreme regents," etc.   The officers of the supreme council are thirteen in number.   Appellant's Constitution, Article 2, Chapter 1, Section 16.

May 1, 1894, William Wasserman applied for membership in the order, describing, in his application, his occupation as "that of restaurateur." His application contains the following:

"Having become acquainted with the objects of your order, I hereby make application for full rate membership in your council, and do declare upon my honor as a man that the statements by me subscribed herein are each and every of them true. * * * I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue or fraudulent statement made therein, or to the medical examiner, or any concealment of facts by me in this application, or my suspension or expulsion from, or voluntarily severing my connection with the order, shall forfeit the rights of myself and my family or dependents, to all benefits or privileges therein."

The following questions and answers appear in the medical examination:

Q. "Do you use alcoholic or other stimulants?" A. "Beer."

Q. "If, so, to what extent?" A. "Formerly; over two years has not drunk at all."

Q. "What has been your habit in this respect through life?" A. "Very moderate."

Q. "Are you now, or have you ever been engaged in the manufacture or sale of intoxicating liquors? If so, when and in what way?" A. "No."

At the end of medical examination and next before the medical examiner's certificate is the signature, "William Wasserman."

In pursuance of Wasserman's application the following certificate was issued to and accepted by him:

"Royal Arcanum.

BENEFIT CERTIFICATE.

This certificate is issued to William Wasserman, a member of Tilden Council, No. 1123, Royal Arcanum, located at Chicago, Ill., upon evidence received from said council that he is a contributor to the widows and orphans' benefit fund of this order; and upon condition that the statements made by him in his application for membership in said council, and the statements certified by him to the

medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract, and upon condition that the said member complies in the future with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the supreme council to govern said council and fund, upon condition that the said member for himself, and for any person or persons accepting or acquiring any interest in this benefit certificate, agrees that no action at law or in equity shall be brought or maintained on any cause or claim arising out of any membership in the Royal Arcanum, or on any benefit certificate, unless such action is brought within three years from the time when the right of action accrues. These conditions being complied with, the supreme council of the Royal Arcanum hereby promises and binds itself to pay out of its widows and orphans' benefit fund to Victoria Wasserman and William Wasserman (children) a sum not exceeding $3,000, in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said member, and upon the surrender of certificate, provided that said member is in good standing in this order at the time of his death, and provided also that this certificate shall not have been surrendered by said member and another certificate issued at his request, in accordance with the laws of the order.

In witness whereof, the supreme council of the Royal Arcanum has hereunto affixed its seal and caused this certificate to be signed by its supreme regent and attested and recorded by its supreme secretary, at Boston, Mass., this 8th day of June, A. D. 1894.

Attest:                    W. O. ROBSON, Supreme Secretary.
                           H. H. C. MILLER, Supreme Regent."

" I accept this certificate on the conditions named therein. Witnessed and delivered in the presence of either
                           G. R. LOTT, Regent, or
                           EMIL FISCHER,
            Secretary of Tilden Council, No. 1123, R. A."

WILLIAM WASSERMAN."

Victoria Wasserman, named in the certificate, is now Victoria Coverdale, one of the appellees. The evidence is conclusive that from the time Wasserman made his application for membership in the order until the time of his death, February 13, 1896, he kept a saloon in connection

with his restaurant business, at number 46 State street, in Chicago, and sold and served, sometimes personally and sometimes by bar-keepers in his employ, intoxicating liquors to be drunk and which were drunk on his premises.

Victoria Coverdale, Wasserman's daughter, called as a witness by appellees, testified in substance, on cross-examination :

"His business was that of a restaurant; he served liquors and you might say that he kept a saloon; there was a bar in there and liquors were served to customers; I never saw my father serve liquor; was not in there very often; sometimes I visited him every day or two for a week, and then again it was two weeks sometimes.   The bar was about as long as half the width of this room;  men would go up to the bar and order drinks, and they were served from the bar; two men were always employed by father behind the bar, and he had this place continuously for about five years prior to his death, or perhaps more."

John Heuppel testified that he worked about a year and a half, altogether, for Wasserman; that Wasserman ran a saloon and restaurant together, and had a couple of bartenders who served drinks, and that sometimes, when the bar-keeper was absent, Wasserman himself served drinks from behind the bar.

A. M. Gallister testified that occasionally he went to Wasserman's place to get a drink or lunch, and had seen Wasserman serve drinks behind the bar when the bar-keeper was not in, and had bought drinks from him; that Wasserman would attend to his wants and draw beer or whisky.

J. C. Harper testified that Wasserman kept a saloon, and, during the busy hours of the day, served drinks behind the bar; that witness had been served by him with drinks at such times.

Henry Berger testified that he was bar-keeper for Wasserman in 1890 and 1891, and subsequently in 1894 or 1895, and that he, Wasserman, served liquors behind the bar.

Appellees did not introduce any evidence tending to prove that Wasserman was not keeping a saloon and engaged in the sale of intoxicating liquors, to be drunk on the premises, when he applied for membership in the order,

but confined themselves to evidence tending to prove that some of the members of the subordinate lodge knew that at the time of his application he was a saloon-keeper.

Adolph Bondy, witness for appellees, testified that he was a member of the Royal Arcanum and belonged to Tilden Council; that he had held office in Tilden Council, but did not in the years 1894, 1895 or 1896; that he signed Wasserman's application and mentioned to leading members of the lodge that at the time of the application Wasserman was in the saloon business; that he told several of the brothers that he had a candidate to present, that the candidate had a restaurant and a bar in connection with it and served drinks, and inquired if there would be any objection to his application, and was answered no, if he was a man of good standing. This witness also testified that he was present at the medical examination of Wasserman, and that he was not asked whether he was in the saloon business; but he supposed he was asked what his business was. Witness further testified that from 1891 till 1895 there was no change in Wasserman's business.

Adolph Weiskopf testified that he was chairman of the investigating committee on Wasserman's application and made a report on that application, and that Wasserman did not change his business from the time he joined the lodge till his death. This witness, on cross-examination, testified:

" I read the application when I signed it; as a member of the Royal Arcanum, I am supposed to know that a saloon-keeper is not eligible; I did not know that this application did not state his real business; I knew that he kept a restaurant in conjunction with the saloon, and the question as investigator, as a member of that committee, was put to him : 'Do you serve drinks?' and he answered it, 'No.' Then I thought I had a perfect right to recommend him as a member of the Royal Arcanum; it was upon what he then said,that he did not serve drinks, that I, as a member of the investigating committee, recommended him to the lodge. If he did serve drinks, and I knew it, I could not have recommended him."

The appellant introduced in evidence the opinion of the Supreme Court of Massachusetts in McCoy v. Roman C.

Mut. Ins. Co., 152 Mass. 272. It was admitted that Wasserman had paid all dues and assessments payable from him to the order, but the amount of such payments was not proved. The cause was tried by the court, a jury being waived by the parties, and the court found for the appellees and rendered judgment for $3,575.

H. H. C. MILLER, SYDNEY STEIN and W. S. OPPENHEIM, attorneys for appellant.

The directors or officers of a mutual benevolent association can not waive by-laws forbidding certain persons becoming members. Grand Lodge A. O. U. W. v. Jesse, 50 Ill. App. 101; McCoy v. Roman Catholic, etc., 152 Mass. 272; Levell v. Royal Arcanum, 30 N. Y. Supp. 205; Bacon on Benefit Societies, Sec. 434a; Niblack on Mutual Benefit Societies, Secs. 96 and 97; American & English Encyclopædia of Law, Vol. III, 2d Ed., 1069; Luthe v. Firemen's Mutual, etc., Co., 55 Wis. 543; Swett v. Citizens Mutual Life Society, 78 Me. 541; Leonard v. American Ins. Co., 97 Ind. 305.

Application, benefit certificate, constitution and by-laws constitute the contract between a member and the society. Fullenweider v. Royal League, 180 Ill. 621.

A mutual benefit association has not the power to insure a person not eligible, or a non-member. In re Mutual Guardian, etc., Co., 77 N. W. Rep. 68; Jacobs v. Mutual Ins. Co., 29 S. E. Rep. 533.

Where the application warrants the truthfulness of the statements made therein and the application contains misrepresentations, all rights under the contract are forfeited. Bacon on Benefit Societies, Sec. 197; Ætna Life Ins. Co. v. France, 91 U. S. 510.

J. HENRY KRAFT, attorney for appellees, contended that, the application for the certificate and membership by William Wasserman having been acted upon by the lodge with full knowledge of the character of the business of William Wasserman, estops the association from now claiming a forfeiture. DeWitt v. Home Forum Benefit Order, 70 N.

W. Rep. 496 (Wis. 1897); Renier v. Ins. Co., 74 Wis. 89; S. C., 42 N. W. Rep. 208, and cases there cited; Stanhilber v. Ins. Co., 76 Wis. 285; 45 N. W. Rep. 221; Bourgeois v. Ins. Co., 86 Wis. 402; 57 N. W. Rep. 38; Dick v. Ins. Co., 92 Wis. 46; 65 N. W. Rep. 742; Dowling v. Ins. Co., 92 Wis. 63; 65 N. W. Rep. 738; Goss v. Ins. Co., 92 Wis. 233; 65 N. W. Rep. 1036; Knights of the Maccabees v. Volkert, 57 N. E. Rep. (Ind.) 203.

The receipt of dues and assessments by the officers of the subordinate lodge after knowledge of the cause of forfeiture amounts to a waiver thereof. Foresters v. Schweitzer, 171 Ill. 325; Mut., etc., Co. v. Coats, 48 Ill. App. 185; Ins. Co. v. Steiger, 26 Ib. 229; Ins. Co. v. Hick, 23 Ib. 381; Ins. Co. v. Barringer, 73 Ill. 230; Ins. Co. v. Cary, 83 Ib. 453; Mueller v. Mutual Ass'n, 51 Ill. App. 40; Com. Ins. Co. v. Spankneble, 52 Ill. 57; Home Ins. Co. v. Garfield, 60 Ill. 124; Phœnix Ins. Co. v. Hart, 149 Ill. 513; Carlock v. Phœnix Ins. Co., 138 Ill. 210; Metropolitan Ass'n v. Windover, 137 Ill. 417, 432.

The subordinate lodge had the right to waive the positive requirements of the by-laws of the order in admitting Wasserman to membership. Foresters v. Schweitzer, 171 Ill. 325; Erdmann v. Ins. Co., 44 Wis. 376; Splawn v. Chew, 60 Tex. 532.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The by-law referred to in the preceding statement, namely, "Applications shall not be received from bar-keepers, or from persons who, at any time, sell or serve intoxicating liquors to be drunk on the premises," was at the time of Wasserman's application for membership in the appellant order, and ever since said time has been, a general law of the order binding on all subordinate lodges and members of the order. The effect of this by-law is, clearly, to render ineligible and exclude from membership the classes of persons mentioned, namely, bar-keepers, and persons who, at any time, sell or serve intoxicating liquors to be drunk

on the premises where sold or served.   Had this provision been incorporated in the law under which appellant was organized, it would hardly be contended, and certainly could not successfully be contended, that either of the classes mentioned could legally be admitted, or become legal members of the order and entitled to its benefits.

In Old People's Home Society v. Wilson, 176 Ill. 94, the court say:   "The corporation has no authority to create a fund for other persons than the classes specified in the law, nor can a member direct the fund to be paid to a person outside of such classes."

See also Palmer v. Welch, 132 Ill. 141, 148.   It is not claimed that the appellant corporation had not the power to pass the by-law in question, on the contrary, its power in the premises is tacitly conceded.   Having power to enact the by-law, we can not perceive why, in principle, its effect is not the same as if it were incorporated in the statute under which the appellant was organized.

In Tudor v. Rapid Transit Co., 154 Ill. 129, 136, the court say:   "In Mason v. Shawneetown, 77 Ill. 533, it was held that where an incorporated city has been invested by the legislature with power to pass an ordinance, and has adopted an ordinance in pursuance of the act creating the corporation, then such ordinance has the force and effect of a law enacted by the legislature, and is to be regarded as a law of and within the municipality."

We can perceive no sound reason why this language is not equally applicable to a by-law passed by a corporation such as appellant, reasonable in itself, and in pursuance of authority conferred by its organic law.   The by-law is part of the alleged contract between Wasserman and appellant. The benefit certificate which Wasserman accepted, contains the following:

"And upon condition that the statements made by him in his application for membership in said council and the statements certified by him to the medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract, and upon condition that the said member complies with the laws, rules and regulations now governing the said council and fund, or that may hereafter be

enacted by the supreme council to govern said council and fund," etc.

" In·construing the contract by the holder of the certificate, or rather that made between the member and the corporation, the application, the examination by the physician, the constitution and by-laws and the certificate issued, are all to be construed together as the contract between the parties." Fullenweider v. Royal League, 180 Ill. 621.

The by-law being part of Wasserman's contract, by his contract, taken in connection with the evidence, he was ineligible to membership. The contentions of appellees' counsel in respect to the by-law are, first, that it was erroneously admitted in evidence, because not specially pleaded, and secondly, that it was waived by the subordinate lodge.

The question whether it was necessary to · plead the by-law is not before us for decision, no cross-error having been assigned by appellees. The second contention involves two questions: namely, whether the subordinate lodge could legally waive the by-law, and, if yea, whether it did waive it. Conceding, for the sake of the argument, that the subordinate lodge could legally waive the by-law, we find no evidence of such waiver. Appellees' counsel assumes that the subordinate lodge knew of the business in which Wasserman was engaged, relying, apparently, on the testimony of Bondy, himself a saloon-keeper, engaged in the same business as Wasserman. But Bondy's evidence falls far short of showing knowledge on the part of the lodge. He testified :

" It was mentioned to leading members of the lodge that William Wasserman was in the saloon business at the time the application was taken. I told several of the brothers that I had a candidate to present; that he was in the same business as I am; had a restaurant and a bar in connection with it; that he managed the place the same as I did; served drinks and managed the business," etc.

The witness does not name any one he told, nor does he state how many he told. Appellees' counsel also refer to Bondy's testimony that Wasserman was not asked by the medical examiner whether he was in the saloon business. It is not claimed that such question was asked, but the

Royal Arcanum v. Coverdale.

question, " Are you now, or have you ever been engaged in the manufacture or sale of intoxicating liquors," was asked, and he answered, " No."    Adolph Weiskopf, chairman of the investigating committee, a witness for appellees, testified that the committee asked him, " Do you serve drinks ?" and he answered, " No."    Instead of the lodge having knowledge that Wasserman was a bar-keeper and engaged in selling and serving intoxicating liquors, the evidence tends strongly to prove that the lodge was deceived as to the nature of his business.    In his answer to the medical examiner, he had stated that he had never been engaged in the sale of intoxicating liquors, and he stated to the investigating committee that he did not serve drinks.    When the lodge came to vote on the question of his admission, it had before it his application, including his answers to the medical examiner, and the favorable report of the investigating committee, and absolutely nothing to indicate the actual business in which Wasserman was engaged.    There is not a particle of evidence that the subordinate lodge knew of Wasserman's ineligibility from the date of his application till the date of his death.    What has been said, if true, as we think it, would seem to render unnecessary a discussion of the question whether the subordinate lodge could legally waive the by-law, but that question having been pressed on our attention by counsel, we proceed to consider it.

The by-law in question went to the very root of the matter.    It, in substance, declared ineligible bar-keepers and persons who, at any time, sell or serve intoxicating liquors to be drunk on the premises.    No question of forfeiture is involved, as counsel for appellees seem to think.    To be forfeited there must be or have been some right.    Without a right to forfeit, there can be no forfeiture.    By the law of the appellant corporation, Wasserman never had any right of membership to be forfeited.

In McCoy v. Roman Catholic Mut. Ins. Co., 152 Mass. 272, it appeared that by a by-law of the order persons over the age of fifty-one years were ineligible to membership in the order.    McCoy, at the time of his application for

membership, was more than fifty-one years of age, but his application stated that he was about forty-nine years of age. The vice-president of the company knew, and others knew, or had good reason to know, that McCoy was older than fifty-one years when he applied for membership. It was claimed that the by-law as to age had been waived, in respect to which the court say :

"None of the other officers of the corporation had any knowledge that the deceased was older than he represented himself to be in his application, and no other person has been admitted as a member of the corporation since the adoption of the by-laws, without an application under the by-laws stating that he was less than fifty-one years of age. But even if the officers of the corporation had attempted to waive the by-laws in this particular, which was of the substance of the contract, we are of opinion that they had no authority so to do. This is a corporation which does not make contracts of life insurance with strangers, but arranges a system of payments for the benefit of the relatives of its deceased members. It adopts by-laws to determine the relations of the members to one another, and also their rights against the corporation. The principles which apply to ordinary mutual insurance companies in regard to the waiver of by-laws by officers are equally applicable to this corporation. Bolton v. Bolton, 73 Maine, 299; Swett v. Citizens' Relief Society, 78 Maine, 541. It is well settled that the officers of a mutual insurance company have no authority to waive its by-laws which relate to the substance of the contract between an individual member and his associates in their corporate capacity," citing numerous cases.

It is evident from this opinion that in appellant's home State, the by-law in question, going, as it does, to eligibility, could not be waived by a subordinate lodge.

The following text books and authorities sustain the proposition that matters going to the substance of the contract can not be waived by officers or agents of the corporation. Niblack on Benefit Societies, Sec. 96 et seq.; Bacon on Benefit Societies, Sec. 434a; Grand Lodge v. Jesse, 50 Ill. App. 101.

Appellees' counsel relies mainly on Foresters v. Schweitzer, 171 Ill. 325, to sustain the contention that the by-law

may be waived; but there is a clear distinction between the facts in that and the present case. The facts in the Schweitzer case are stated in 70 Ill. App. 325. Schweitzer was a bar-keeper and was eligible to membership in the order in the " hazardous risk class," in which class a higher rate of dues was required than in the ordinary risk class. In his application for membership he stated that he was a restaurant manager, and was admitted as a member in the ordinary risk class. Before his certificate was delivered to him it was stated by a member in an open meeting of the lodge, that Schweitzer was a bar-keeper. Nevertheless, the lodge continued to receive from him, until the time of his death, the rates for the ordinary risk class. Held, that the company was liable. The case there was this : Schweitzer was eligible to membership, but was liable to pay hazardous risk assessments. The lodge, knowing his occupation, admitted him to membership, but demanded of him only ordinary risk assessments, which he paid. He paid all he was required to pay by the lodge.

The contention of appellees' counsel plainly stated is this : That a valid general law of the order excluding from membership certain classes may be wholly disregarded and practically nullified by a subordinate lodge. To so hold would be to hold, in effect, that the by-laws of such a corporation as appellant are merely formal and of no binding force. We can not so hold. In Moerschbaecher v. Royal League, 188 Ill. 9, Moerschbaecher, being eligible, became a member of the order. A by-law of the order which, by his contract, was binding on him, provided that any member who, after obtaining membership in the order, should engage in or pursue the occupation or employment of keeping a saloon, should stand suspended and forfeit all interest in the benefit fund. He was admitted a member November 18, 1890, and in 1891 he engaged in the business of a saloon-keeper and continued in that business till his death. Held, that there could be no recovery. By the by-law in the case cited, a member merely forfeited his rights by engaging in the prohibited occupation, while, by the by-law

in the present case, appellee's being engaged in the prohibited occupation absolutely excluded him from membership.

There is in the present case another element which, in our opinion, precludes recovery. Wasserman's application, signed by him, contains the following :

" I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue or fraudulent statement made therein, or to the medical examiner, or any concealment of facts by me in this application, or my suspension or expulsion from, or voluntarily severing my connection with the order, shall forfeit the rights of myself and my family or dependents to all benefits and privileges therein."

In Wasserman's medical examination he answered " No " to the question :

" Are you now, or have you ever been engaged in the manufacture or sale of intoxicating liquors ? If so, when and in what way ? "

The evidence is conclusive that his answer was false. In view of the by-law excluding from membership persons in Wasserman's occupation, the question was material and vital. The courts, in insurance cases, have indulged in so great refinement in discussing the question whether an express warranty is, in law, a warranty or a mere representation, that, in many instances, it is next to impossible for a subordinate court to decide the question with any confidence. Nevertheless, we incline to the view that, in the present case, the truth of the answers must be regarded as warranted, in which case the question of their materiality would not arise; but the answer above quoted was material and vital, and its falsity must have been known to Wasserman. And such being the case, the false answer, even if considered as merely a misrepresentation, vitiated the benefit certificate. National Union v. Arnhorst, 74 Ill. App. 482, 489, and cases cited; Bacon on Benefit Societies, Secs. 212, 230a; Joyce on Insurance, Sec. 1900.

The judgment will be reversed.

Judge WINDES, being a member of the appellant order, took no part in the decision.