Martha Holbeck, Appellee, v. Illinois Bankers Life Assurance Company, Appellant.

Opinion filed March 2, 1943.

SIMPSON, REED & BURROUGHS, of Edwardsville, for appellant.

WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, MANUEL M. WISEMAN, of Alton, and PHILIP G. LISTEMAN, of East St. Louis, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This suit is the equivalent of a suit on a life insurance policy, and the appeal is prosecuted from a judgment of $2,350, in favor of Martha Holbeck, appellee, hereinafter designated as plaintiff, and against the Illinois Bankers Life Assurance Company, appellant, hereinafter designated as defendant, when defendant elected to stand on its motion to dismiss or strike paragraphs 12 and 13 of plaintiff's reply.

The complaint, in the usual form for suits on insurance policies alleged that the Court of Honor, a fraternal benefit society, in the year 1919 issued its certificate to one Sarah Easton; that the Court of Honor suspended business in 1924, but that its assets, including the certificate in question, were assumed chronologically by the Springfield Life Insurance Company, the Abraham Lincoln Life Insurance Company, and defendant; that Sarah Easton died on October 23, 1938, having theretofore kept and performed all the terms and provisions of the certificate, and since her death, plaintiff had likewise kept and performed all conditions precedent. An amendment to the complaint, set forth that the said Sarah Easton died intestate, and left surviving her, as her only heir, her sister, plaintiff herein.

Defendant by its pleading, presented and apparently relied upon one defense; that the original benefit certificate was issued in 1904; that in 1919, Sarah Easton requested a change of beneficiary, at which time a new certificate, differing only slightly from

the original, was issued; that the application and the constitution or by-laws were a part of the contract and that both provided for a forfeiture of membership and all rights thereunder if the member became engaged in the liquor business and that Sarah Easton did engage in the liquor business, to-wit, in March 1934, and did so remain until her death, by reason whereof her certificate became null and void.

Plaintiff filed a reply embracing several distinct replications, only one of which, embodied in paragraphs 12 and 13 of plaintiff's reply, is material upon this appeal. This replication, in the nature of a confession and avoidance, confessed the member's engagement in the liquor business, but avoided by claiming that because of certain provisions in the application the member had the privilege of keeping her certificate alive by forwarding to the supreme recorder of the Court of Honor a written waiver, waiving any liability on the part of the society if her death was traceable to the liquor business. The replication further alleged that the Court of Honor was not in existence when Sarah Easton entered the liquor business, and claimed that since a waiver could not be filed with the Court of Honor, defendant was estopped from asserting that the certificate sued upon was void.

Defendant thereafter filed motion to dismiss or strike the reply, particularly directed against paragraphs 12 and 13, on the ground that same were insufficient to constitute an estoppel or an avoidance of the matters set up in the answer. This motion to strike was denied. Defendant refused to plead to the replication in question, stood on its motion to strike, and the court entered judgment *nil dicit* against defendant in the sum of $2,350, which represents the face value of the policy of $2,000 and 5 per cent interest for three and one-half years.

After this issue of law was disposed of, an issue of fact was made up, to be tried by a jury, over the ob-

jection of defendant, said issue being based upon paragraph 14 of plaintiff's reply to defendant's amended answer, which in substance set forth that defendant through its duly authorized agents, knew that Sarah Easton was engaged in the sale of intoxicating liquors, and therefore was estopped from asserting that the certificate sued upon was null and void. This issue of waiver was tried before a jury, who returned a verdict in favor of plaintiff. Defendant moved for judgment notwithstanding verdict, which was allowed by the court, whereupon plaintiff prosecutes her cross-appeal, and assigns as cross-error relied upon, error of the court in allowing defendant's motion for judgment notwithstanding verdict, and in refusing to enter judgment on the verdict of the jury.

In and by the application for membership of the said Sarah Easton in the court of honor, she warranted, as pleaded by defendant:

"I am not now engaged in any of the following occupations, " . . . the . . . sale of malt, vinous, spirituous, or other intoxicating liquors, as a beverage, either as proprietor, stockholder, or employee . . . .

"Provided that . . . should I engage in the occupation or business of the sale or manufacture of malt, vinous, spirituous or other intoxicating liquors as a beverage, either in the capacity of proprietor, stockholder or employee, that my certificate will thereupon become null and void.

"I agree to . . . conform in all respects to the Constitution, Laws and Rules of the Society, now in force, or which may hereafter be adopted; and that this application, including . . . the law of the Society shall form the sole basis of my admission into, and continued membership in the Court of Honor, and of the Benefit Certificate to be issued to me by said Court of Honor . . . .

At the time the original application was made and the original certificate of membership issued, there was in full force and effect, as pleaded by defendant, a provision in the constitution or by-laws of the Court of Honor, section 107 as follows:

"Sec. 107. Persons engaged in the following occupations or who shall engage therein occasionally for hire or otherwise shall not be admitted to benefit membership in this Society (here follows list of many prohibited occupations) . . . persons engaged in the manufacture or sale of malt, vinous, spirituous, or other intoxicating liquors as a beverage, either as proprietor, stockholder or employee; yardmen or switchmen; conductor, engineer, firemen, or brakeman on any steam railway train; or any other hazardous business or occupation not herein specifically mentioned: PROVIDED, THAT IF after having become a member of the Society he shall engage in any of the above named or like hazardous occupations his certificate shall by such fact become forfeited and void, unless before entering upon any of the foregoing occupations he shall file with the Supreme Recorder, upon form prescribed by the Board of Supreme Directors a written waiver of the Society's liability upon his benefit certificate in case of his death or disability, either as the result of accident occurring in, or of disease directly traceable to his employment in such prohibited occupation, the acceptance of such waiver to be subject to the approval of the Board of Supreme Directors. If such waiver be not filed prior to the entrance of the member into the prohibited occupation it shall have the same effect if filed at any time during his continuance in such employment, if accompanied by a certificate of present good health, except that the right to make a waiver as herein provided is expressly denied to members engaged in the occupation or business of the sale or manufacture of malt, vinous, spirituous,

or other intoxicating liquors, as a beverage, either in the capacity of proprietor, stockholder, or employee.''

In the year 1918 the constitution or by-laws were amended by the insertion of section 145, later re-enacted as section 130 in the constitution of 1922 and pleaded by defendant, as follows:

''Any member who is now engaged, or shall here-after engage in the manufacture or sale of malt, vi-nous, spirituous or fermented liquors to be used as a beverage, either in the capacity of proprietor, stock-holder, agent or servant, shall, ipso facto, forfeit his membership in this Society and all rights thereunder and shall moreover forfeit all payments made by him and his certificate of membership shall become abso-lutely null and void without any action on the part of his local Court or this Society, or any officer thereof; and no payment of assessments, percapita tax or lo-cal Court dues thereafter made by him, nor the ac-ceptance thereof by the officers of his local Court or of this Society, shall have the effect of waiving such forfeiture or of reinstating such member to any rights as a member of this Society: PROVIDED that if the occu-pation so engaged in was not prohibited by the By-laws at the date of the issuance of such member's certificate, nor at the time he engaged therein, the provisions of this section shall not apply: . . . Members engaging in the occupation or business of the sale or manufacture of malt, vinous, spirituous or other intoxicating liquors, as a beverage either in the capacity of proprietor, stockholder or employee for-feit all rights to membership and their certificates shall, ipso facto, become null and void except the mem-bers be within the proviso herein.''

The contract in this case is the application of the member, the constitution and by-laws of the society, and the benefit certificate issued by the society to the member, and all are to be construed together. *Fullen-wider v. Supreme Council Royal League,* 180 Ill. 621;

*Steen v. Modern Woodmen of America,* 296 Ill. 104. A person who enters such an association must acquaint himself with its laws, for they are the yardstick of his rights, his duties and his liabilities. By-laws providing for forfeiture of membership upon such member engaging in the liquor business, have been held valid and enforceable by our courts. *Mutual Protective League v. Langsdorf,* 126 Ill. App. 572; *Royal Arcanum v. Cloverdale,* 93 Ill. App. 373; *Moerschbaecher v. Supreme Council Royal League,* 188 Ill. 9. In the application, in this case, the liquor business is singled out as being forbidden, and placed in a class by itself:

"It being understood . . . that should I engage in the occupation or business of the sale . . . of liquor . . . my certificate will thereupon become null and void."

Again in the constitution of 1903, in full force and effect at the time of the application for membership of Sarah Easton, the liquor business is singled out from 31 other occupations, as being forbidden, as being the one occupation concerning which the member could under no circumstances keep his certificate alive by the filing of a waiver. The proviso, "Except that the right to make a waiver as herein provided is expressly denied to members engaging in the occupation or business of the sale . . . of . . . intoxicating liquors . . .," limits and modifies the preceding sentence, wherein provision was made for filing a waiver in other prohibited occupations.

Under section 145 of the constitution of 1918, later re-enacted as section 130 of the constitution of 1922, there was still a provision to the effect that any member then or thereafter engaged in the sale of liquors shall forfeit his membership, and contains the proviso that if the occupation so engaged in was not prohibited by the by-laws at the date of the issuance of such member's certificate, nor at the time he engaged

therein, the provisions of this section should not apply. Plaintiff contends that this section would not work a forfeiture, as "nor at the time she engaged therein," she was not (presumably so) prohibited from engaging therein. But at the time of the issuance of the original certificate in 1909, and the later one of 1919, she was prohibited from doing so. And by the later constitution of 1922, she was prohibited from thereafter engaging in the liquor business, which constitution was in full force and effect in 1934, when she did begin to engage in the prohibited occupation. So, unquestionably, Sarah Easton did not come within the proviso.

Counsel for plaintiff argue, that when the Court of Honor went out of business, there was no supreme recorder, with whom plaintiff could file a waiver. Inasmuch as we are constrained to hold that there is no ambiguity in this contract of insurance, and that plaintiff did not come within the proviso, with reference to waiver, that question is not material here. Under the contract in question there was nothing Sarah Easton could do to avoid a forfeiture, if she sold intoxicating liquors; that she did so is admitted by paragraphs 12 and 13, and the trial court erred in not allowing the motion to strike said paragraphs.

The issue of fact, based upon paragraph 14, of plaintiff's reply, was predicated upon the theory that defendant knew of Sarah Easton's engagement in the liquor business, yet continued to accept her premiums and became thus estopped from asserting nonliability. To support this contention, plaintiff offered one witness, as to the controverted facts, Martha Holbeck, who testified in substance that between 1933 and before 1937, she assisted her sister, Sarah Easton, about her place of business in Bethalto, Illinois; that some man whose name seems to be unknown, came to their place in the winter of 1935, that he stated his business, and her sister got out her insurance policy and assumption certificate, and showed it to him, whereupon

he checked with his book, which witness described as a "regular insurance book." She further testified that he checked with records he had with him. He then gave her a card, . . . which was not produced upon the trial and told her that the Illinois Bankers Life at Monmouth had taken this over and to thereafter send her premium payments to Monmouth. He told Sarah Easton, so witness testified, that he was a representative of the Illinois Bankers Life. Witness further testified that during the half an hour this man was there, beer was served to customers.

The law is well settled in Illinois that an agent cannot confer power on himself and his agency or authority cannot be established by showing what he said or did. *Dodson v. Loaleen Mut. Benefit Ass'n,* 247 Ill. App. 283; *Standard Mut. Benefit Corp. v. State,* 197 Ark. 333, 122 S. W. (2d) 459; *Sommerio v. Prudential Ins. Co. of America,* 289 Ill. App. 520, 523, 524; *Chicago v. Jewish Consumptives Relief Society,* 323 Ill. 389, 395, 396, *King v. Chicago, B. & Q. R. Co.,* 235 Ill. App. 401, 407; *Connecticut Fire Ins. Co. of Hartford, Conn. v. Baker,* 278 Ky. 245, 128 S. W. (2d) 547, 3 C. J. S., sec. 322, page 276.

In the case of *Dodson v. Loaleen Mut. Benefit Ass'n, supra,* as in the case at bar, the disputed fact of agency was attempted to be proven by what the alleged agent said and did. There the court said at page 286, "The fact of agency or the authority of the agency cannot be established by showing what the agent said or did, and the power of the agent can only be proved by tracing it to the source of authority—the principal— by some word or act of such principal. (*Merchants Nat. Bank of Peoria v. Nichols & Shepard Co.,* 223 Ill. 41.) An agency cannot be proved by the mere declarations of the supposed agent, when the fact of the agency is in issue." The testimony of plaintiff with reference to all things said and done by this supposed agent was clearly incompetent, and without any

evidence of agency, there could not possibly be any notice to defendant, and without such evidence a directed verdict was mandatory.

The trial court did not err in allowing defendant's motion for judgment notwithstanding the verdict in plaintiff's favor on the issue of fact raised by paragraph 14 of plaintiff's reply and defendant's rejoinder thereto, as the verdict was clearly against the manifest weight of the evidence.

For the reasons above indicated the judgment of the trial court in entering judgment notwithstanding verdict in favor of defendant is affirmed. The judgment entered in favor of plaintiff and against defendant for its failure to plead to paragraphs 12 and 13 of plaintiff's reply is reversed and remanded to the circuit court of Madison county with directions to strike paragraphs 12 and 13.

*Reversed in part, with directions.*