## LOCKHART et al. v. ILLINOIS BANKERS LIFE ASSUR. CO.

No. 9560.

Court of Civil Appeals of Texas. Austin.

May 22, 1946.

■■■■■■■■■■■■■■■■■■

Grover Sellers, Atty. Gen., and W. V. Geppert and C. K. Richards, Asst. Attys.. Gen., for appellants.

Locke, Locke & Purnell, Maurice E. Purnell, and Eugene M. Locke, all of Dallas, for appellee.

McCLENDON, Chief Justice.

This case is companion to the Mutual (Lockhart v. American Mutual Life Insurance Co., Tex.Civ.App., 194 S.W.2d 285) and Lutheran (Lockhart v. Lutheran Mutual Life Insurance Co., Tex.Civ.App., 194 S.W.2d 290), decided by this court April 24, 1946; there being but one point of difference factually between those cases and this. The suit was brought by the Illinois (Illinois Bankers Life Assurance Company, an old line insurance company chartered under the laws of Illinois, and having a permit to do business in Texas) against the Board (State Board of Insurance Commissioners) and other officials to recover gross premium taxes for 1936 and subsequent years upon assessments collected from Texas holders of beneficiary certificates issued by the Court of Honor Life Association "a predecessor fraternal benefit society, whose assets ultimately were purchased by appellee." The sums involved were demanded by the Board (as having accrued under Art. 4769, Vernon's Ann.Civ.St.), and were paid by the Illinois into the Treasury suspense account under Art. 7057b, Vernon's Ann.Civ.St. In a trial to the court upon agreed facts the judgment was for appellee.

It was conceded by appellants in the Mutual and Lutheran that those cases were on all fours in principle with the American case (Lockhart v. American United Life Insurance Co., Tex.Civ.App., 181 S.W.2d 607, error refused) and called for a like decision, unless, as there contended, the statutes exempting fraternal benefit societies (Arts. 4779, 4858a and 4823, Vernon's Ann.Civ.St.) from the tax imposed by Art. 4769, Vernon's Ann.Civ.St., were invalid under Texas Const. Art. VIII, Sects. 1, 2 and 4, Vernon's Ann.St.

It is now conceded by appellants that the decisions of this court in the Mutual and Lutheran cases are correct; and the constitutional questions there urged are no longer urged in this case. The only remaining issue in this case is whether the factual difference between this and the Mutual and Lutheran cases calls for a different holding to the effect that the certificates here involved were converted from fraternal benefit society certificates to policies of life insurance within the meaning of Art. 4769. This factual differential arises as follows.

In each of the Mutual and Lutheran cases the fraternal benefit society converted to a level premium life insurance company under enabling statutes of the state creating it, and thereafter ceased to issue fraternal benefit certificates or conduct or sponsor a fraternal order, but continued the old certificates (where not converted to level premium policies) under the same contractual obligations attaching thereto at the time the society converted to a level premium life insurance company.

The pertinent facts regarding the appellee (substantially stated) are these: The Supreme Court of Honor was organized in 1895 under the laws of Illinois, as a fraternal benefit society. Its name was changed by charter amendment in 1900 to Court of Honor Life Association. It functioned under the laws of Illinois until 1924 as a fraternal benefit society in all respects as defined by Chapter 8 of Title 78 R.C.S. of Texas, Vernon's Ann.Civ.St. Art. 4820 et seq. In 1909 it acquired a certificate to do business in Texas which remained in effect until February 18, 1925. September 27, 1924, it entered into a contract of reinsurance with Springfield Life Insurance Company, a legal reserve life insurance company organized under the laws of Illinois, having a permit to do business in Texas, which was renewed until 1931. Under this contract the Springfield Company acquired all the insurance business and assets of the Court of Honor corporation, assuming all of its liabilities and all its

outstanding certificates, in accordance with the terms thereof "and the provisions of the Constitution and Laws governing same as in force at the time this reinsurance contract is adopted, and does hereby reinsure said risks, and expressly waives the emergency assessment clause incorporated in or governing each such certificate, and agrees to issue to the holder of each such certificate a rider of assumption of all liability thereunder." It provided further that "when the reinsured company has fully performed all of its covenants as herein provided, its charter shall be surrendered and its Corporate Organization dissolved." This was done.

February 14, 1931, there was a "contract of merger" between Springfield Corporation and Abraham Lincoln Life Insurance Company, an Illinois legal reserve life insurance company, under which the latter acquired all the business and assets and assumed all the liabilities of the former. The Lincoln had no permit to do business in Texas. February 18, 1935, a contract of reinsurance was executed between the Lincoln corporation and appellee, under which appellee acquired all the assets and business and assumed all the liabilities of the Lincoln. The merger agreement between the Springfield and the Lincoln and the reinsurance contract between the Lincoln and appellee differed in no essential respect from the reinsurance contract between the Court of Honor and the Springfield. The appellee has had a permit to do business in Texas continuously since 1935, and has filed its annual reports upon the same forms as those filed by the American as set forth on page 612 of 181 S.W.2d, which listed separately its level premiums and its benefit assessments, paying the tax on the former and not on the latter.

The three contracts under which the assets and liabilities of the Court of Honor passed to appellee worked no character of change in the certificates issued by the former or the liability of appellee thereunder, unless it be in the waiver of the emergency assessment clause; a subject we will discuss later. The certificates continued to possess all of the qualities and attributes of fraternal benefit certificates and acquired by the transfer none of the qualities or attributes pertaining peculiarly to life insurance companies generally. There are many differences between these two types of insurance, which differences are so familiar that they need not be reiterated here. None of these differences were affected by the contracts of reinsurance and merger. The certificates still remained subject to the constitution and by-laws of the Court of Honor and the laws of the State of Illinois. Two cases decided by appellate courts of Illinois are pertinent in this regard, as they deal with the same corporations as those here involved: Saltsman v. Springfield Life Insurance Co., 1929, 254 Ill.App. 440, and Holbeck v. Illinois Bankers Life Assurance Co., 1943, 318 Ill.App. 296, 47 N.E.2d 721. In the former the question was whether the proceeds of one of the reinsured certificates was exempt from garnishment, under a statute exempting the proceeds of fraternal benefit certificates from garnishment. The exemption was upheld, the court saying: "On the facts as stipulated, we are of the opinion that the undertaking by plaintiff in error (the insurance company) to reinsure the holders of certificates in the Court of Honor did not have the effect of changing the character of the insurance, nor the terms of the contract as evidenced by the certificate."

In the latter recovery was denied upon a certificate reinsured by the appellee here, for violation by the holder of the certificate of a provision of the by-laws of the Court of Honor prohibiting engaging in the liquor business.

The emergency assessment clause (waived by the reinsurance contract) merely gave the right to the society to levy an additional assessment in case "funds available from stipulated periodic assessments and from all other sources are insufficient," to pay losses. There is no inherent reason inhibiting a continuing fraternal benefit society from making provision by contract of reinsurance or otherwise for funds adequate to obviate the necessity of emergency assessment. This was done in this instance by assumption of liability on the part of the reinsurer, thereby pledging all

of its assets to that end in consideration for the acquisition of all the assets of the society. The character of the insurance evidenced by the certificates was in no way changed by this arrangement.

The trial court's judgment is affirmed.

Affirmed.