# WAMSLEY, ADMINISTRATOR, v. CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

[No. 6,096.  Filed November 5, 1907.  Rehearing denied January 30, 1908.]

1.  RAILROADS.—*Speed Ordinances.*—*Violation.*—*Negligence.*—*Proximate Cause.*—*Inferences.*—Evidence that a railroad company ran its train over the streets of a city at the rate of fifty miles per hour, in violation of a speed ordinance restricting the speed of trains to four miles per hour, and that such train killed a person on the street crossing, establishes the company's negligence, and justifies the inference that such negligence was the proximate cause of decedent's death.  p. 149.

2. TRIAL.—*Instructions.—Peremptory.—When Proper.*—A peremptory instruction for defendant may properly be given, where the plaintiff fails to make out a *prima facie* case, or where a verdict for the plaintiff, if given, would be set aside as unsupported. p. 150.

3. RAILROADS.—*Travelers.—Duties at Crossings.—Presumptions.*— As against a traveler who could see and hear an approaching train in time to avoid a collision, it will be presumed either that he did not look or listen, or that he failed to give heed to what he saw or heard. p. 150.

4. SAME.—*Travelers.—Crossing Accidents.—Contributory Negligence.*—A traveler who is guilty of contributory negligence in going upon a railroad crossing, cannot recover for injuries negligently inflicted by the railroad company. p. 150.

5. TRIAL.—*Burden of Proof.—Contributory Negligence.*—Under §362 Burns 1908, Acts 1899, p. 58, the burden of proving contributory negligence, in personal injury cases, is upon the defendant. p. 151.

6. SAME.—*Burden of Proof.—Contributory Negligence.—Railroads. —Crossing Accidents.*—In an action for the killing of plaintiff's decedent, by reason of the negligence of defendant railroad company in running its train at an excessive and prohibited speed within the city limits, the burden of showing that the decedent's view of the track was unobstructed and that she was negligent in failing to see the approaching train, is upon the company, but all of the evidence on such question must be considered. pp. 151, 155.

7. SAME.—*Railroads.—Crossing Accidents.—Contributory Negligence.—Failure of Proof.*—Where defendant railroad company failed to prove the surroundings at the time of its killing of decedent by reason of running its train at an excessive and prohibited speed, it is not entitled to a peremptory instruction in its favor, the burden of proof on such question being upon it. p. 151.

8. EVIDENCE.—*Present Condition of Railroad Track.—Crossing Accidents.*—Proof of the surroundings of a railroad track at the time of the trial is not conclusive of its surroundings at the time of receiving the injuries. p. 154.

9. SAME.—*Railroad Crossing Accident.—Signals.*—Evidence that some of the witnesses heard the locomotive whistle on the train which, at a prohibited speed, ran over decedent, and that some did not hear same, does not justify the trial court in taking the case from the jury on the ground of decedent's contributory negligence. p. 154.

From Superior Court of Marion County (66,440) ; *John L. McMaster,* Judge.

Action by Charles O. Wamsley, as administrator of the estate of Minnie Wamsley, deceased, against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for defendant, plaintiff appeals. *Reversed.*

*John P. Leyendecker* and *Pickens, Cox & Kahn,* for appellant.

*Frank L. Littleton* and *Leonard J. Hackney,* for appellee.

RABB, J.—The appellant sued appellee to recover damages for the death of his intestate, alleged to have been caused by the negligence of appellee. The cause was submitted to a jury for trial, and over appellant's objection and exception the court gave to the jury a peremptory instruction to return a verdict in favor of appellee. This action of the court presents the only question in the record in this court.

The negligent act complained of was that the appellee ran its train of cars through a densely populated part of the city of Indianapolis, at a dangerous rate of speed, and in violation of the provisions of a speed ordinance of the city, which train in its passage through the city struck and killed appellant's intestate while she was crossing the appellee's railway track where the same intersects Roach street in said city.

The evidence in the case showed without dispute that appellant's intestate was struck and instantly killed by appellee's engine drawing a passenger-train over its road; 1. that the accident occurred in a populous part of the city of Indianapolis, at a point where appellee's track intersects Roach street, one of the public streets of the city; that the engine which struck and killed the deceased was running at the rate of from forty to fifty miles per hour, and that there was in force at the time an ordinance of said city prohibiting persons in charge of an engine or train of cars from permitting the same to be run within the city limits at a greater rate of speed than four miles per hour. This evidence fully established the charge of negligence made in the

complaint against the appellee, and it fully justified the in-
ference, also, that such negligence was the proximate cause
of the death of appellant's intestate.

The instruction given by the court withdrawing the case
from the jury is defended on the ground that the evidence,
without dispute, showed that the deceased was guilty
2. of contributory negligence proximately causing her
death. Appellee's proposition, that it is a duty of the
trial court to give the jury a peremptory instruction, where
the evidence fails to make out a *prima facie* case for the
plaintiff, or where it would not support a verdict if returned
in its favor, correctly states the law. And we also fully
recognize the rule contended for by appellee, and so often
announced by all the courts of last resort in this coun-
3. try, some of which are cited in appellee's brief, to the
effect that it is the duty of a traveler on a public
highway approaching a railroad crossing to use his sense of
sight and hearing to protect himself from danger, and that,
if the situation is such that a traveler on the highway could
see or hear an approaching train in time to avoid collision,
it will be presumed against him, if injured by a collision
with the train, either that he did not look or listen for its ap-
proach, or that, if he did, he failed to heed what he saw or
heard, and that under such circumstances, if injury results
to the traveler, he cannot recover against the railroad
4. company for the injury sustained by the collision, no
matter how negligently its servants may have oper-
ated the train, not on the ground that the negligence of the
servants of the railroad company was not a proximate cause
of the injury, but on the ground that the traveler's negli-
gence was a concurring proximate cause contributing to the
accident. This doctrine is too well settled to need citation of
authorities in its support, and we do not understand that it
is seriously disputed.

Under the law in this State as it has existed since the act
of February 17, 1899 (Acts 1899, p. 58, §362 Burns 1908),

when the law on the subject went into force, in all
5. actions for personal injuries, contributory negligence
is a defense that must be made to appear affirmatively
from the evidence in order to be available. Prior to that
time the burden was on the plaintiff in actions of this char-
acter to aver and prove his freedom from contributory negli-
gence. Appellee's argument in support of the court's in-
struction proceeds upon the assumption that the evidence in
this case shows without dispute that appellant's intestate
could have seen the approaching train that struck and killed
her, had she used her sense of sight, for a distance of fifty-
six feet from the railroad crossing as she approached it; that
the approaching train was in plain sight coming down the
track for a distance of twelve or fifteen hundred feet before
it reached the crossing, and that it could be seen by persons
approaching the crossing, from the direction from which the
deceased came upon the track, for a distance of fifty-six feet.
If this assumption is correct, we are not prepared to question
the appellee's conclusion. The appellee, however, had the
burden of establishing these assumed facts. It is un-
6. necessary, under the law as it now stands in this State,
for the plaintiff in an action against a railroad com-
pany for injuries, or for death sustained in a crossing col-
lision, to go into the details of the surroundings of the scene
of the accident, to show that obstructions were or were not
present that would or would not prevent the person injured
from seeing or hearing approaching trains, unless such facts
are necessary to prove the defendant's negligence charged in
the complaint. They were not necessary to prove the al-
leged negligent acts in this case.

The fact that there were no obstacles or obstructions in the
way that would have prevented the appellant's intestate
from seeing the engine that struck her was a fact es-
7. sential to be shown to establish contributory negli-
gence. The burden of proving the absence of ob-

structions rested upon the appellee. They had nothing to do with making the appellant's case.

The evidence is meager and unsatisfactory upon the question of the surroundings of the accident. There is no evidence as to the movements of the deceased from the time she left the corner of Burton avenue and Roach street, a distance of perhaps two or three hundred feet from the railway, until the very instant the locomotive struck and killed her. The evidence shows that Udell street is three squares—a distance of some ten or twelve hundred feet—north of Roach street; that the railway runs north and south, and Roach street, east and west; that the train which struck and killed appellant's intestate was a passenger-train and approached from the north.

But one witness, Prather, was examined with reference to the approach to the railroad crossing on Roach street. His testimony is very meagre; it does not undertake to show what the conditions were at the time the accident happened. In his examination in chief he was asked: "Q. About how many houses are there in the first square north of Roach street? A. There is only one house, and there is a shoe shop on the rear end, right on the corner of the alley. Q. Could you get a clear view of the railway north of there? A. You could not." On cross-examination he testified on the subject as follows: "Q. I believe you stated that persons coming along Roach street could not see until they passed the shoe shop. A. I do not think they could. Q. There was nothing to prevent their seeing after they passed the shoe shop, was there? A. Well, the distance was not very great, but I should not judge there would be anything to obstruct their view. Q. There is nothing to obstruct their view to the north of a train coming down? A. No, sir. Q. When you get past the shoe shop you can see clear up past Udell street? A. You can see after you get into the center of the track. The elevation of the track is higher than where you walk."

These facts were supplemented on this subject by the following admission: "It is agreed that the distance from the northeast side of the shoe shop to the center of the railway track, measuring at right angles with the railway track, is forty-six feet. It is agreed, also, that the distance from the eastern corner of the shoe shop, measuring with the north line of Roach street to the center of the railway track, is fifty-six feet, and that there is nothing to obstruct the view of defendant's track as far as Udell street at any point east of the shoe shop to the defendant's track, and that defendant's track is a single line of track."

This is all that appears in the evidence upon this subject. The witness Prather did not pretend to know what obstructions, if any, intervened between the corner of the shoe shop and the appellee's railway track at the time of the accident. His testimony was not directed to that particular time, nor does the agreement cover the time the accident occurred. It matters not what may be or may have been the condition of the railway approach, the ability of persons to see approaching trains, or the character of obstructions to the view of travelers on the street approaching the crossing at any time except at the time the deceased was killed. The question is: what was the condition with reference to obstructions at that time, and could she have seen the approaching train?

The evidence nowhere indicates whether there is a right of way fenced off, or what temporary obstructions may, or may not, have been in the line of vision of one approaching the railway track from the corner of the shoe shop at any time. There is some evidence that there was an alley between Burton avenue and the railroad, but just the location of the alley is not made clear, except that the shoe shop is said to be upon the alley, and the corner of the shoe shop was forty-six feet from the railroad, in a direct line. There is evidence that there were dwellings along Burton avenue, with outhouses reaching back to the alley. What the distance from the alley in question to the railway track north

of Roach street was is not made clear, and, for anything that appears to the contrary, the space between the alley and the railroad, at the time of the accident, may have been filled all the way along from Roach street to Udell street with temporary obstructions, such as vans, wagons or other obstacles of that character; and, for ought that appears in the evidence, there may have been buildings along there at that time that would obstruct the vision. The admission introduced in evidence speaks in the present tense. It does not pretend to relate to the condition that prevailed at the time of the accident. It was made six or seven months after the accident occurred. The evidence is an utter blank as to what the conditions were with reference to obstructions at the time of the deceased's death.

It is true that one or two witnesses testified to having heard the whistle when the train was somewhere between the bridge and Thirtieth street. Where the bridge was is not indicated—evidently above Thirtieth street. Thirtieth street was several blocks beyond Udell street, and out of sight of the crossing. Many of the witnesses who testified did not hear the whistle, and there is not sufficient evidence on this subject to justify the court in withdrawing the case from the jury, and to have made a case of contributory negligence against the deceased, even if she did hear the whistle sounded when the train was out of sight, at an uncertain distance from the crossing, and was able to recognize and know that it was a train approaching the crossing. But there is nothing in the evidence that would compel the jury to find that the deceased, if she did hear the whistle, would have known that it was an approaching train on appellee's road.

Judgment reversed.

## ON PETITION FOR REHEARING.

RABB, J.—In the decision of this case the facts relied upon by appellee, as justifying the giving of the peremptory instruction for appellee, were taken up as presented by it, and upon such facts it was held that such instruction ought not to have been given.

In the brief in support of the petition for rehearing, appellant's counsel attributed to certain parts of the opinion a meaning which was not intended. The court did not mean to be understood as holding that the defendant must prove by his own evidence contributory negligence, but that the burden was upon him to show such facts from all the evidence. The sole fact justifying the peremptory instruction relates to the conduct of the deceased, which it is claimed was, in view of all the circumstances, negligent and contributed to her death. The burden of establishing such negligence was upon the appellee. Evidence introduced by either party bearing upon such issue was proper to be considered; but, when it was all considered, it must preponderate in favor of the charge that the deceased was guilty of negligence. There was no witness to the accident out of which the suit grew; no one who knew anything about the movements, conduct or surroundings of the deceased at the time of the accident. No witness pretends to have made any observation of the surroundings at that time. The agreed facts read in evidence could not properly be extended so as to overcome the presumption, which the law raises in favor of the deceased, that she used due care, and, standing by itself, justify the charge that the deceased was guilty of negligence.

Petition for rehearing overruled.