Brotherhood of Railroad Signalmen of America, Petitioner, v. Zoning Board of Appeals of City of Chicago and E. A. Dolan, Respondents.

Gen. No. 45,728.

Opinion filed September 24, 1952. Released for publication October 15, 1952.

HENSLEE, MONEK & MURRAY, of Chicago, for petitioner; JOHN B. KING, of Chicago, of counsel.

JOHN J. MORTIMER, Corporation Counsel for City of Chicago, for certain respondent; L. LOUIS KARTON, Head of Appeals and Review Division, and JOHN L. STEFFENS, Assistant Corporation Counsel, both of Chicago, of counsel. MORGAN, HALLIGAN & LANOFF, of Chicago, for certain other respondents; CHARLES J. MORGAN, and W. KIER JOHNSON, both of Chicago of counsel.

Mr. Presiding Justice Lewe delivered the opinion of the court.

This cause is before this court on the petition of the Brotherhood of Railroad Signalmen of America, hereinafter called petitioner, upon leave given to appeal from an order of the superior court sustaining a decision of the Zoning Board of Appeals of the City of Chicago which reversed the action of the Commissioner of Buildings in issuing to petitioner a permit to occupy the premises known as 503 West Wellington Avenue in the City of Chicago, Cook county, Illinois.

The petitioner is a national labor union having a membership of about 13,000 throughout the United States. It also maintains a number of subordinate lodges or locals in other parts of the country. About July 1947, petitioner purchased for $35,000, an old brick residence consisting of ten or twelve rooms, at 503 West Wellington Avenue, which it uses as its national headquarters. Wellington Avenue is an east and west street, and the premises are located at the southwest corner of the intersection of Wellington and Pine Grove Avenues.

In reversing the Commissioner of Buildings of the City of Chicago, the Zoning Board of Appeals found that the block in which the premises in controversy are located is zoned for apartments; that an office, within the meaning of the Chicago Zoning Ordinance, is not a permitted use in an apartment district; that the building in question was acquired for and is used primarily by the petitioner for its executive, administrative and secretarial business; that a room in the premises which was originally the living room of the residence is now designated as a game room and library but the evidence indicates that the room is not furnished in the manner of a game room and library; that the room contains but few if any books and no other recreation or game equipment but does contain

107

office desks, typewriters, filing cabinets and other equipment usual in a business office, and that the petitioner is using the premises as an office contrary to the provisions of the ordinance.

September 28, 1948 the petitioner, an unincorporated fraternal association, not for profit, filed a petition praying for a writ of certiorari, pursuant to the Revised Cities and Villages Act, chapter 24, section 73–6, to reverse the decision of the Zoning Board of Appeals. After hearing additional evidence the trial court affirmed the decision of the Zoning Board.

The sole question presented is whether the petitioner is a "club" or "fraternity" within the meaning of the Chicago Zoning Ordinance, which reads: "Section 8. Apartment House Districts—Permitted uses in apartment house districts are: [Subparagraph 15] Club, fraternity, or sorority house not operated for pecuniary profit."

Jesse Clarke, president of the petitioner, testified that shortly after acquiring the premises in question the exterior of the building was "steam cleaned"; a retaining wall was constructed across the front of Wellington Avenue; a new sidewalk was built on Pine Grove Avenue, and a hedge planted along the sidewalk; and that petitioner expended about $3,000 on the foregoing exterior improvements. Clarke also testified that the interior of the building was renovated and painted; that fluorescent lights were installed on the first and second floors; that no material or structural changes were made in the building; that a large room in the basement was furnished with a pingpong table, bookcases and reading material; that the living room on the first floor has a large table and bookcases; that the table is used for playing various games; that the bookcases contain current magazines, reading material and books pertaining to signalmen; that a front room on the second floor facing Wellington Avenue

108

is furnished with a large table, a davenport and a desk at one end which is used by the witness; that the third floor of the building is occupied by the caretaker and his family; that the recreational and other facilities in the basement and on the first and second floors are all available to and used by the members except one room on the second floor which is used as an office; that all records are kept in the building; that three girls are employed in doing clerical work and carrying on correspondence with the members relating to their dues, benefits, and other organizational matters; that all the employees entertain visiting members and their wives; that the only other business transacted on the premises is the preparation of material for a magazine which is published elsewhere and distributed among the members without charge; that about once a month movies are displayed, and that on these occasions about twenty-five or thirty persons are present.

Charles L. Bromley, secretary and treasurer of petitioner, testified that the premises are used as the international headquarters of the union, and that the activities pertain exclusively "to the membership of the Brotherhood."

William Ehrat, a real estate broker called by the petitioner, testified that before the petitioner purchased the premises in question he discussed the contemplated purchase with the Building Commissioner of the City of Chicago; that during the course of the discussions he explained to the Building Commissioner the use to which the petitioner intended to put the building; that as a result of the discussion a permit was granted; that there is located five doors west of the premises in question a 67-apartment building, and across the street a convalescent home and a Baptist school.

Respondents called two witnesses, Alderman Burmeister, a member of the City Council, and Edwin A. Dolan, a resident located immediately west of peti-

109

tioner's building. The resident testified that he inspected the premises while the petitioner was in the process of moving; that during his visit he talked to carpenters and other workmen employed by the petitioner who told the witness that it was going to be a business office; that the furniture "consisted of desks, files and the usual equipment that goes with an office"; and that venetian shades were put on the windows. The resident admitted that the place is "kept up nicely," and is "rather presentable," and that there have been no changes "in the front of the building."·

█ So far as the evidence shows, neither the city councilman nor the resident examined the interior of the building after it was redecorated, refurnished and occupied by the petitioner. The councilman was not sworn as a witness. The statements made by carpenters and other workmen when he visited the premises, as related by the resident are clearly hearsay (*O'Brien v. Retirement Board*, 343 Ill. App. 630), and therefore not binding on the petitioners. Since respondents' witnesses, the councilman and the resident, did not inspect the interior of the premises after they were occupied by petitioner, their testimony has no probative value in determining the actual use of the building. The petitioner's testimony stands uncontroverted; hence the question whether its use of the premises violates the ordinance becomes one of law.

Petitioner's membership is comprised entirely of the members of the Brotherhood of Railroad Signalmen of America and, like other labor unions, its primary purpose is to improve their economic condition by resolving questions of wages, collective bargaining, hours of labor, and other incidents of their employment. According to Clarke's testimony he received and entertained eight or ten members in his room daily and an equal number use the other facilities made available to the membership while visiting Chicago.

It also appears from his testimony that all of the employees engaged by the petitioner spend part of their time in entertaining out-of-town members and their wives.

Webster's International Dictionary, Second Edition, 1949, defines a fraternity as "A body of men associated for their common interest, business or pleasure" and as "A fraternal society, association or order." In *In re Mason Tire and Rubber Company*, 11 F. (2d) 556, at page 557, the court said: "Any society organized for the accomplishment of some worthy object through the efforts of its members working together in brotherly union, especially if it be organized not for selfish gain but for the benefit of the membership or for the benefit of the membership and men in general, is a fraternal organization in the popular acceptation of the term." To the same effect see *Alpha Rho Alumni Association v. City of New Brunswick*, 126 N. J. L. 233, 18 A. (2d) 68.

Manifestly every large fraternal society necessarily maintains records of its membership and especially where, as here, members are scattered all over the nation and it must correspond with them.

█ In our view the undisputed evidence shows that petitioner has all the essential attributes of a fraternity, and that it uses the premises as a fraternity within the meaning of the zoning ordinance here involved.

For the reasons given, the order of the superior court affirming the decision of the Zoning Board of Appeals is reversed.

*Reversed.*

FEINBERG and KILEY, JJ., concur.