DUNCAN MUDD, a Minor, by his Mother and Next Friend, Rosalie Mudd, Plaintiff-Appellant, *v.* GOLDBLATT BROS., INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 81—2779

Opinion filed September 21, 1983.

RIZZI, J., dissenting.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Nat P. Ozmon, Mark Novak, Noel C. Lindenmuth, Rick A. Gleason, and Dario A. Garibaldi, of counsel), for appellant.

Sweeney & Riman, Ltd., and Epton, Mullin, Segal & Druth, both of Chicago (Elliot R. Schiff, Keven F. Donohue, and Don Segal, of counsel), for appellees Goldblatt Bros., Inc., Boy Carriers, Inc., and Terry Frankovich.

John B. Grogan, Ltd., of Chicago (Susan Gunty, of counsel), for appellee First Baptist Church of Hammond.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Duncan Mudd brought this action to recover damages for injuries he suffered due to the alleged negligence of defendants, Boy Carriers, Inc., First Baptist Church of Hammond, Indiana, Indiana Harbor Belt Railroad Company and Terry Frankovich. An amended complaint included Goldblatt Bros., Inc., the parent company of Boy Carriers, Inc., as a defendant. The Indiana Harbor Belt Railroad Company was dismissed upon motion and is no longer involved. The trial court directed a verdict in favor of defendant First Baptist Church of Hammond at the end of plaintiff's case. The jury returned verdicts in favor of the remaining defendants. Plaintiff appeals from both the directed verdict and the jury verdicts.

Defendant has not presented any questions relating to the factual basis for the jury's verdicts. We will therefore state only the facts necessary to our discussion of the various assigned errors.

The injuries sustained by plaintiff, an 11-year-old boy at the time, occurred on March 26, 1975, in Hammond, Indiana. Plaintiff testified that he went with two friends to a vacant lot where several buses were parked. They boarded these buses, which were up on blocks, with wheels missing and windows broken. After one of his friends broke a window, they noticed some men coming from a nearby building.

Plaintiff stated that he jumped out the back door of the bus to get away from one of the men who came on the bus. He ran down the alley and saw that he was being chased by the same man (defendant Frankovich). He then ran across a street and through a parking lot. At this point he was near some railroad tracks upon which a freight train was traveling. Plaintiff, just five feet from the tracks, changed

his direction and was cut off by the man chasing him. He stopped abruptly and fell backwards. Plaintiff's left hand was severed as it fell across one of the rails.

Frankovich was employed in its Hammond office by Boy Carriers, Inc., a subsidiary of Goldblatt Bros., Inc. Plaintiff's theory is that Boy Carriers, Inc., agreed with First Baptist Church of Hammond for its employees to protect school buses owned by the Church. Thus, it is alleged, Frankovich was not only acting as an agent of Boy Carriers and Goldblatt, Bros., but also as an agent of the First Baptist Church.

Frankovich was the only other eyewitness to the accident. He testified that he was in Boy Carriers' office when a fellow employee came in and said that some boys were breaking windows on the buses parked in the vacant lot. Frankovich and two other employees went outside to check. Several boys ran from one of the buses and Frankovich chased the boy (plaintiff) who came out the back door of the bus. He chased plaintiff down the alley, across a street and into a small parking lot near the railroad tracks. He saw plaintiff run alongside the tracks and dive under the train. As he arrived at the spot where he saw plaintiff, Frankovich saw him lying between the rails.

Frankovich further testified that he worked for Boy Carriers. He stated that his immediate supervisor told him and his fellow employees to keep an eye on the buses in the vacant lot. Frankovich's answer to the original complaint admitted the allegation of a relationship between Boy Carriers and First Baptist Church for the purpose of protecting the buses. This answer was later withdrawn by leave of court so that Frankovich could file a motion to dismiss plaintiff's amended complaint. However, a similar answer was made in response to plaintiff's third amended complaint which was filed during the trial and after the directed verdict for First Baptist Church. In his answer to an interrogatory propounded by plaintiff, Frankovich also stated there was an oral agreement for Boy Carriers and First Baptist Church to watch over each other's vehicles.

Boy Carriers' answer to the original complaint was filed in conjunction with Frankovich. However, an answer to an interrogatory, made by Boy Carriers' general supervisor, denied knowledge of any agreement with First Baptist Church. Subsequent answers to the second and third amended complaints filed by Goldblatt Bros. denied the existence of any relationship with First Baptist Church, but admitted that there was an understanding by certain employees that they would watch over property of First Baptist Church.

First Baptist Church denied all allegations that an agreement or agency relationship existed with Boy Carriers for the protection of

church buses. Its theory is that plaintiff did not present any basis to conclude that such a relationship did exist. First Baptist Church argued at trial that any admissions of codefendants made in the pleadings were inadmissible against it. The trial court agreed, sustaining the Church's objections. At the close of plaintiff's case, the trial court granted the Church's motion for a directed verdict.

■ Plaintiff first argues that the trial court committed error when it applied the Illinois rule, rather than the Indiana rule, regarding the burden of proof on the issue of contributory negligence. In Indiana, the burden of pleading and proving contributory negligence is placed upon the defendant. (See Ind. Code Ann. Rule TR. 9.1(A) (Burns 1983).) In Illinois, at the time of trial in this matter, the burden was on the plaintiff to prove freedom from contributory negligence. See *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.

Under traditional conflict of law rules, a "forum will apply its own local law in determining which party has the burden of persuading the trier of fact on a particular issue unless the primary purpose of the relevant rule of the state of the otherwise applicable law is to affect decision of the issue rather than to regulate the conduct of the trial." (Restatement (Second) of Conflict of Laws sec. 133 (1971); *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 404 N.E.2d 265, *appeal denied* (1980), 81 Ill. 2d 589; *People v. Saiken* (1971), 49 Ill. 2d 504, 275 N.E.2d 381, *cert. denied* (1972), 405 U.S. 1066, 31 L. Ed. 2d 796, 92 S. Ct. 1499.) In *Babcock*, this court was faced with a similar issue when it was argued that an instruction on the burden of proof for contributory negligence should have allocated the burden according to Michigan law. Under Michigan law, contributory negligence is an affirmative defense. We found the Michigan law was a procedural law designed to regulate conduct of the trial and determined that the trial court's instruction according to Illinois law was proper. *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 929.

We, too, determine the Indiana rule is one of procedure regulating the conduct of the trial. Support for this proposition is found in *Midland Trail Bus Lines, Inc. v. Martin* (1935), 100 Ind. App. 206, 194 N.E. 862, in which it was stated that the predecessor statute to the current rule was "a rule of practice and not a rule governing a right of action." 100 Ind. App. 206, 211, 194 N.E. 862, 864; see also *Chicago Terminal Transfer R.R. Co. v. Vandenberg* (1905), 164 Ind. 470, 73 N.E. 990; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Wolf* (1920), 189 Ind. 585, 128 N.E. 38; *Southern Ry. Co. v. McNeeley*

(1909), 44 Ind. App. 126, 88 N.E. 714.

Plaintiff contends the Indiana rule is a substantive rule, or is substantive in effect, and therefore falls within the exception in the general rule stated above, citing *Evansville & Terre Haute R.R. Co. v. Berndt* (1909), 172 Ind. 697, 88 N.E. 612, *Rhea v. Sawyer* (1913), 54 Ind. App. 512, 102 N.E. 52, and *Wamsley v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1907), 41 Ind. App. 147, 82 N.E. 490. In these cases, plaintiff argues, the respective reviewing courts based their decision on the important substantive effect of the statute allocating the burden of proving contributory negligence on the defendant. After an analysis of these cases, we find they do not support plaintiff's contentions.

In *Wamsley*, the trial court directed a verdict in favor of the defendant. Reversing the trial court, the reviewing court noted that the defendant had the burden of proving contributory negligence and could not make assumptions that facts already in evidence showed the deceased's actions contributed to the accident. (41 Ind. App. 147, 151, 82 N.E. 490, 491.) In *Rhea*, an action for property damages, the trial court's instruction to the jury placed the burden of proving contributory negligence on the defendant. The appellate court reversed because the rule, as it existed in Indiana at that time, applied only to personal injury and death cases. (54 Ind. App. 512, 102 N.E. 52.) Finally, in *Berndt*, the Indiana Supreme Court made only passing reference to the statute making contributory negligence a matter of defense when it held harmless a presumption stated in an instruction. The court noted that the statute did not create a presumption of due care, but that it could have the same result when there is no evidence relating to contributory negligence. 172 Ind. 697, 705-06, 88 N.E. 612, 615.

Plaintiff also argues that the Indiana rule should be followed because the Illinois rule should be considered substantive. (Citing *Valleroy v. Southern Ry. Co.* (Mo. 1966), 403 S.W.2d 553; *Precourt v. Driscoll* (1931), 85 N.H. 280, 157 A. 525.) In an action under Federal Employers' Liability Act (45 U.S.C.A. sec. 51 *et seq.* (1976)) arising out of an accident in Illinois, the Missouri Supreme Court considered whether the plaintiff was required to follow the Illinois rule and plead the exercise of due care or if the Missouri rule placing the burden on defendant should be followed. Following Missouri case law (see *O'Leary v. Illinois Terminal R.R. Co.* (Mo. 1957), 299 S.W.2d 873), the court determined the Illinois rule was a substantive requirement and thus should be applied. *Precourt* involved a similar analysis with an accident occurring in Vermont, the Vermont rule and the lawsuit

brought in New Hampshire.

These cases represent a line of cases which have held that a foreign State's rule allocating the burden of proving contributory negligence on the plaintiff was intended to affect substantive rights and therefore should be applied in a lawsuit in the forum State. (See Annot., 35 A.L.R.3d 289, 318 (1971).) Illinois considers the burden of proof of contributory negligence to be a procedural matter. (*Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 929.) We have determined that under Indiana law this burden of proof, placed on the defendant there, is also procedural. Thus, the trial court was correct in applying Illinois law in this regard.

■ Plaintiff next argues that he was prejudiced by the giving of the following special interrogatory:

> "Do you find that plaintiff was, before and at the time of the occurrence, exercising ordinary care for his own safety so as to avoid proximately causing himself injury?"

Plaintiff contends this interrogatory prejudiced him by holding him to a standard of care greater than that required of a minor. He also argues that the interrogatory was confusing, misleading, did not control the general verdict and was not limited to the actual injuries sustained.

A special interrogatory must be given when it is in proper form and relates to an ultimate issue of fact. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1980), 82 Ill. App. 3d 727, 403 N.E.2d 108.) When there is a factual question as to a plaintiff's conduct and its causal relationship to the injury in a negligence case, a special interrogatory on the question of contributory negligence is proper. (*Wissmann v. Jedrzejak* (1979), 71 Ill. App. 3d 688, 389 N.E.2d 8, *appeal denied* (1979), 79 Ill. 2d 619.) A special interrogatory on the question of a minor's contributory negligence should contain a definition of the standard of care by which the minor is to be judged. (*Babcock v. Chesapeake & Ohio Ry. Co.*; *Shaver v. Berrill* (1976), 45 Ill. App. 3d 906, 358 N.E.2d 290, *appeal denied* (1977), 65 Ill. 2d 584.) An interrogatory which does not contain such a definition may properly be given, however, if the definition of a minor's standard of care is provided in a jury instruction. *Babcock v. Chesapeake & Ohio Ry. Co.*

In the case at bar, two instructions were given which reflected the appropriate standard by which to judge plaintiff's conduct. Both of these instructions accurately stated the same standard under both Indiana and Illinois law. (See *Petroski v. Northern Indiana Public Service Co.* (1976), 171 Ind. App. 14, 354 N.E.2d 736; *LaNoux v. Hagar*

(1974), 159 Ind. App. 646, 308 N.E.2d 873.) Plaintiff's instruction No. 12 follows Indiana Pattern Instruction No. 5.01, providing in pertinent part:

> "Negligence on the part of the plaintiff is the failure to do what a reasonably careful and prudent child of like age, knowledge, judgment and experience would have done under the same or like circumstances or the doing of something which a reasonably careful and prudent child of like age, knowledge, judgment and experience would not have done under the same or like circumstances; in other words, negligence on the part of the plaintiff is the failure to exercise that reasonable or ordinary care which a child of like age, knowledge, judgment and experience would exercise."

Plaintiff's instruction No. 13A follows Illinois Pattern Instruction (IPI), Civil, No. 10.05, and states:

> "A minor is not held to the same standard as an adult. When I use the words, 'ordinary care' with respect to the plaintiff, I mean that degree of care which a reasonably careful and prudent child of like age, knowledge and judgment and experience would have used under the same or like circumstances."

These instructions, read together with the special interrogatory, gave a proper statement to the jury on the law of contributory negligence as it relates to a minor. See *Babcock v. Chesapeake & Ohio Ry. Co.*

Plaintiff relies on *Shaver v. Berrill* in support of his argument that an interrogatory which fails to state the degree of care required of a child in determining contributory negligence is error. The *Shaver* court found an interrogatory to be deficient because it did not contain such a definition. As in *Babcock*, however, we find *Shaver* to be internally inconsistent. IPI Civil No. 10.05, stating the child standard of care, was given in *Shaver*. Since special interrogatories must be considered together and in light of other instructions of the court (*Vuletich v. Bolgla* (1980), 85 Ill. App. 3d 810, 407 N.E.2d 566, *appeal denied* (1980), 81 Ill. 2d 600), any deficiency should have been cured. *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697.

Plaintiff's remaining arguments in regard to the special interrogatory are interrelated and based on some of the same arguments already considered. It is contended that the interrogatory is confusing because it did not state the minor's standard of ordinary care, it could not control the general verdict and did not place the burden of proof on defendants. It is argued that the interrogatory could not control the general verdict because of the standard-of-care issue and the fact

that it was not limited to the actual injuries which occurred.

Plaintiff argues that the jury might have believed the interrogatory referred to possible injuries from other sources. The test of the correctness or propriety of instructions is not what meaning the ingenuity of counsel can, at leisure, attribute to them, but how and in what sense, under the evidence before them and the circumstances of the trial, ordinary men acting as jurors will understand the instructions. (*Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 394 N.E.2d 1241.) It is clear from the interrogatory and the instructions given that the jury was to limit its consideration of plaintiff's conduct to the avoidance of the injuries which resulted in this litigation. (*Cf. Vuletich v. Bolgla* (the word "occurrence" in a special interrogatory is sufficiently clear to focus the jury's consideration to the critical period of defendant's alleged negligence).) The jury's answer turned on its determination of whether plaintiff's conduct contributed to his injuries. The answer did control the general verdict.

We next address the claimed errors which led to a directed verdict in favor of defendant First Baptist Church. Plaintiff claims the trial court erred in excluding certain testimony of Charles Perez and defendant Frankovich, both of whom were employees of Boy Carriers at the time of the incident. The controverted testimony related to an alleged agreement by which Boy Carriers' employees would look out for vandals on First Baptist Church buses parked in a vacant lot behind the Boy Carriers' office.

Frankovich, called by plaintiff as an adverse witness (Ill. Rev. Stat. 1981, ch. 110, par. 2—1102), testified that Richard Ross, his supervisor, told him to watch over the church buses in the vacant lot. This testimony was allowed only after the trial court gave a limiting instruction to the jury stating that Frankovich's testimony was not binding on First Baptist Church, but could be relative to other parties in the case. An offer of proof made by plaintiff revealed that Perez would have testified that Ross told him and coworkers that there was an agreement with the church to watch out for the buses on the vacant lot. Perez also would have testified that he was present during a conversation between Ross and Reverend Jack Hyles, pastor of the First Baptist Church, when it was agreed that Boy Carriers' employees would watch out for the buses.

Plaintiff argues this testimony was direct and first-hand testimony of the relationship and agreement between Boy Carriers and First Baptist Church. Defendant First Baptist Church states this testimony merely shows the witnesses were agents of Boy Carriers and Goldblatt Bros. and argues that only the testimony of the witnesses'

superior would be direct and first-hand testimony. Under similar circumstances, the appellate court in *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 41-42, 343 N.E.2d 207, *appeal denied* (1976), 63 Ill. 2d 552, stated:

"As a general rule admissions are inadmissible as hearsay when made by a person who is not in privity with the party against whom such are introduced. (*Callaghan v. Myers*, 89 Ill. 566; *Brotherhood of Railroad Signalmen v. Zoning Board of Appeals*, 348 Ill. App. 106, 108 N.E.2d 43.) Thus, in order to introduce a statement or act by an agent or employee as an admission it must *first* be shown (1) that he was such an agent or employee (*Washburn v. Terminal Railroad Association*, 14 Ill. App. 2d 95, 252 N.E.2d 389), (2) that such statement or act was made or done in and about a matter over which he had actual or apparent authority (*Burgard v. Mascoutah Lumber Co.*, 6 Ill. App. 2d 210, 127 N.E.2d 464), and (3) that he spoke or acted under or by virtue of his authority as such agent or employee (*City of Chicago v. Jewish Consumptives Relief Society*, 323 Ill. 389, 154 N.E. 117). While an agent is competent to testify as to his agency or authority, the fact of agency or authority, when disputed or denied, must ordinarily be established by evidence of the acts or conduct of the principal or his statements to the agent or third persons. (*Merchants' National Bank v. Nichols & Shepard Co.*, 223 Ill. 41, 79 N.E. 28.) Neither the fact nor the extent of the agency can be proved by evidence of the purported agent's past declarations asserting agency. (4 Wigmore, Evidence sec. 1078, at 176 (Chadbourn rev. ed. 1972); McCormick on Evidence sec. 267, at 642 (2d ed. 1972); 5 Callaghan's Illinois Evidence sec. 10.78, at 428 (1964); Gard, Illinois Evidence Manual, Rule 174, at 201-02 (1963).) As stated in *Holbeck v. Illinois Bankers Life Assurance Co.*, 318 Ill. App. 296, 47 N.E.2d 721:

'The law is well settled in Illinois that an agent cannot confer power on himself and his agency or authority cannot be established by showing what he said or did. [Citations.]' (318 Ill. App. 296, 304.)

See *King v. Chicago, Burlington & Quincy R.R. Co.*, 235 Ill. App. 401. See also *Beccue v. Rockford Park District*, 94 Ill. App. 2d 179, 236 N.E.2d 105."

In the instant case, plaintiff alleged Boy Carriers was an agent of the First Baptist Church for purposes of protecting the church buses. Defendant First Baptist Church denied any such relationship. The au-

thority to bind a principal will not be presumed, but rather, the person alleging authority must prove its source unless the act of the agent has been ratified. (*Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 405 N.E.2d 1076; *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535.) Since the authority of an agent comes only from the principal, it is necessary to trace the source of an agent's authority to some word or act of the alleged principal. *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569; *Schoenberger v. Chicago Transit Authority.*

Proof of this allegation of agency was attempted by plaintiff's counsel through evidence of a conversation between Reverend Jack Hyles and a Boy Carriers' supervisor, Ross. At the time this evidence was offered, in the form of Perez' testimony, no foundation had been laid concerning the scope and extent of Reverend Hyles' authority to act for the First Baptist Church in this regard. The trial court correctly ruled that plaintiff needed to establish this agency and authority before the conversation of Ross and Reverend Hyles was admissible against the defendant First Baptist Church. See *Kapelski v. Alton & Southern R.R.*

For this purpose, Reverend Jack Hyles and Reverend David Hyles were examined in chambers by the parties. Subsequently, plaintiff called only Reverend David Hyles as a witness. Reverend David Hyles testified that he was an assistant pastor at the First Baptist Church. His father is Reverend Jack Hyles. He knew the church owned some buses in March 1975. However, he did not have any responsibility over the buses and had no knowledge of where they were parked and stored. He also had no knowledge of any agreement between the church and Boy Carriers relating to the buses. During his examination in chambers, Reverend David Hyles stated that the Board of Deacons of the church took care of business transactions and the managing of church property. He further stated that his father, to whom he was an assistant, was in charge of the spiritual duties of the church, but also moderated the Board of Deacons' meetings.

The *voir dire* examination in chambers of Reverend Jack Hyles revealed that he had been with the church for 22 years. He stated he was the "boss man" when it came to the pastoral duties of the church. He was not aware of any agreement with Boy Carriers relating to the buses. He stated that would not be part of his responsibilities. He further stated that any budget for bus maintenance was made by the Board of Deacons and approved by the church congregation.

The record does not establish a *prima facie* case that Reverend

Jack Hyles was an agent with authority to bind defendant First Baptist Church. See *Chmieleski v. Venture Stores, Inc.* (1982), 106 Ill. App. 3d 312, 436 N.E.2d 4; *Kapelski v. Alton & Southern R.R.*

■ Plaintiff further argues that the trial court should have allowed into evidence the answers to the complaint and certain interrogatories made by Boy Carriers and Frankovich. The effect of these answers was to admit there was an oral agreement with the church in regard to watching over the buses. However, these answers by Boy Carriers and Frankovich are not admissible against their codefendant First Baptist Church for the purpose of establishing privity between them. (29 Am. Jur. 2d *Evidence* sec. 699 (1967).) Only where the relationship is admitted or proved by evidence other than the statements in the pleadings would the answers be admissible. We do not think the trial court abused its discretion in directing a verdict for defendant First Baptist Church. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■ Plaintiff also contends that the trial court erred by not informing the jury why the church was no longer participating in the trial. By not so informing the jury, plaintiff argues, the jury could have concluded that a settlement with the church had been reached. This argument was advanced by plaintiff in the trial court at the time the directed verdict was granted. We agree with the trial court's assessment made at the time, *i.e.*, that there would be less of a chance of misconception if a neutral statement was made to the jury, which was done. Plaintiff has made no showing that the neutral statement made by the trial court was prejudicial (*Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 388 N.E.2d 1298, *appeal denied* (1979), 79 Ill. 2d 611), and we find no abuse of discretion in that regard.

■ Finally, it is contended that the closing argument by defense counsel for Frankovich materially prejudiced plaintiff by implying that Frankovich had no insurance. In closing argument, Frankovich's counsel stated:

> "That complaint is served on Terry [Frankovich], he comes to court, he hires an attorney, he defends the case."

This statement was not objected to at the time it was made. The question was raised in the post-trial motion, which was denied. When read in the context of the record, it is clear this statement does not refer to insurance coverage or the lack of it. No specific mention of insurance was made; even where insurance is merely mentioned, reversal is not required. (*Kosch v. Monroe* (1982), 104 Ill. App. 3d 1085, 433 N.E.2d 1062; *Baikie v. Luther High School South* (1977), 51 Ill. App. 3d 405, 366 N.E.2d 542.) If the lack of insurance was in some

way implied by the argument, the statement does not require a reversal.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGILLICUDDY, J., concurs.

JUSTICE RIZZI, dissenting:
I believe plaintiff was denied a fair trial. I would reverse the judgment entered on the directed verdict in favor of defendant First Baptist Church of Hammond (Church). I would also reverse the judgment entered on the jury verdict in favor of defendants Boy Carriers, Inc. (Carriers), Terry Frankovich and Goldblatt Bros., and remand the case for a new trial as to all defendants.

I will first address the directed verdict in favor of the Church. Plaintiff's theory is that there was an oral agreement between Carriers and the Church that Carriers would protect the Church's school buses from vandalism, and that Carriers was, therefore, an agent of the Church for the purpose of protecting the buses. In order to establish the oral agreement and the agency, plaintiff called Charles Perez as a witness. Perez testified that he was employed by Carriers and that shortly before the occurrence he was being trained to become an assistant manager. His immediate supervisor was Richard Ross. Ross told Perez that his job included keeping an eye on the Church's school buses and chasing away children who might vandalize the buses.

When plaintiff attempted to question Perez regarding an oral agreement that was made in his presence between Ross and the senior pastor of the Church, Reverend Jack Hyles (Hyles), the trial court sustained an objection to the questioning, and plaintiff made an offer of proof. The offer of proof shows that Perez would have testified that he was present during a conversation between Ross and Hyles when it was agreed that Carriers' employees would watch out for the Church's school buses and protect them from vandalism. The offer of proof was denied, and the offered evidence was excluded. Since Ross and Hyles denied making the agreement, plaintiff was not able to prove that an oral agreement was made between Carriers and the Church to have Carriers protect the Church's school buses from vandalism. However, Carriers' employees did in fact protect the Church's school buses.

At the conclusion of plaintiff's case, the trial court directed a verdict in favor of the Church on the basis that plaintiff did not prove

the oral agreement between Carriers and the Church and plaintiff did not prove an agency relationship between Carriers and the Church for the purpose of protecting the school buses.

In agreeing with the trial court's ruling, the majority states: "The record does not establish a *prima facie* case that Reverend Jack Hyles was an agent with authority to bind defendant First Baptist Church." I disagree. In my judgment, the trial court erred in excluding relevant testimony by Perez. Plainly, if that testimony had been admitted, then it would have been improper for the trial court to direct the verdict in favor of the Church. Thus, I believe the trial court erred in directing the verdict.

I believe that at the time Perez' testimony was offered, reasonable persons could have concluded that Hyles had apparent authority to act for the Church with regard to the agreement with Carriers. Apparent authority is such authority as the principal knowingly permits the agent to assume or which the principal holds his agent out as possessing. It is the authority which a reasonable, prudent person, exercising diligence and discretion, would naturally suppose the agent to possess. See *Barraia v. Donoghue* (1977), 49 Ill. App. 3d 280, 283, 364 N.E.2d 952, 954.

Here, it was undisputed that Hyles was the senior pastor of the Church. Clearly, as senior pastor, he was an agent of the Church. Agency may be established and its nature and extent shown by parol evidence, whether direct or circumstantial, and reference may be had to the situations and acts of the parties, and other circumstances germane to the question, and if the evidence shows one acting for another under circumstances implying knowledge on the part of the supposed principal of such acts, a *prima facie* case of agency is established. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 518, 170 N.E.2d 569, 573.) In the present case, the record demonstrates that Hyles was acting for the Church as its senior pastor under circumstances implying knowledge on the part of the Church. Thus, a *prima facie* case of agency plainly existed.

Since Hyles was an agent of the Church, one could reasonably conclude that within the realm of that agency, as senior pastor of the Church, he had apparent authority to make the agreement involved in this case. It is hard to imagine how a church could function if its senior pastor did not have apparent authority to make such an agreement. It is unreasonable to presume that such agreements could only be made en masse by the congregation or by the Board of Deacons of the Church. In this regard, it must be kept in mind that we are dealing here with apparent and not actual authority. The extent of Hyles'

actual authority is not involved here.

In my judgment, the difference I have with the majority on the issue of apparent authority is significant, and the ramifications of the majority opinion could substantially affect the operation of religious schools, churches and temples within Illinois. If a senior pastor, priest or rabbi does not have apparent authority to make the agreement involved here, he would likewise not have apparent authority to make agreements to have religious school buses repaired, to order basic supplies or food, or to place other orders and make other agreements that are necessary for the day-to-day operations of the religious school, church or temple. I fail to see how a religious school, church or temple could effectively operate under the restrictions that could develop by virtue of the majority opinion.

The majority seems to find it significant that Hyles stated during his *voir dire* examination that making such agreements was not part of his responsibilities. I find no significance in Hyles' statements because here we are dealing with apparent authority and not actual authority. Moreover, Hyles' statements that he did not make the agreement would only have gone to the weight to be given Perez' testimony and not to its admissibility. The jury was not required to believe the Church's evidence and disregard plaintiff's evidence.

The majority's conclusion regarding the exclusion of Perez' testimony seems to be based on the premise that plaintiff was required to prove that the Board of Deacons expressly gave Hyles authority to make the agreement or that the Board of Deacons ratified the agreement. I know of no legal principle which supports that conclusion. In fact, the cases cited in the majority opinion seem to require an opposite conclusion, since they support the propositions that apparent authority is sufficient authority to establish an agency relationship and that the nature and extent of the apparent authority may be established by parol evidence, whether direct or circumstantial. (See *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 343 N.E.2d 207; *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569; *Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 405 N.E.2d 1076; *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535.) To illustrate, in *Kapelski*, the court stated: "Thus, in order to introduce a statement or act by an agent or employee as an admission it must *first* be shown (1) that he was such an agent or employee [citation], (2) that such statement or act was made or done in and about a matter over which he had actual or apparent authority [citation], and (3) that he spoke or acted under or by virtue of his authority as such agent or employee [citation]." (*Kapelski v. Al-*

*ton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 42, 343 N.E.2d 207, 210.) Here, the record clearly evinces that at the time Perez testified (1) there was no question that Hyles was an agent of the Church, (2) a reasonable person could conclude that within that agency, as senior pastor of the Church, Hyles had apparent authority to make an agreement for security services for the Church's school buses, and (3) that Hyles spoke or acted under or by virtue of his authority as such agent of the Church.

For the reasons stated, I believe the excluded testimony of Perez was admissible. It was relevant and was admissible as an admission as well as to prove a legally operative fact of plaintiff's cause of action against the Church, *i.e.*, that an oral agreement was made between Carriers and the Church to have Carriers protect the school buses from vandalism. (See D. Louisell, J. Kaplan & J. Waltz, Evidence 87, 88 (4th ed. 1981).) If the testimony had been admitted, it would have been improper for the trial court to direct a verdict in favor of the Church. Therefore, the trial court erred in directing the verdict.

Next, I will address the jury verdict in favor of the remaining defendants. I believe the judgment on the verdict must be reversed because of the trial court's error in requiring plaintiff to prove as an essential element of his case that he was free from contributory negligence. The record manifests that defendants freely pounded away on the fact that freedom from contributory negligence was an essential element of plaintiff's cause of action which plaintiff did not prove. The truth is, however, that freedom from contributory negligence was not an essential element of plaintiff's cause of action. The unfairness of what occurred is obvious.

This entire occurrence took place in Indiana, all the factual witnesses lived in Indiana, and Indiana has the most significant contacts with the action. Therefore, the trial court correctly ruled that the substantive law of Indiana should apply. Under the law of Indiana, freedom from contributory negligence is not an essential element of a plaintiff's cause of action based on negligence. Yet, throughout the trial the trial court adopted the position that plaintiff could not recover unless he proved that he was free from contributory negligence, and the court instructed the jury accordingly. Thus, to me, it is plain that the trial court committed reversible error because it changed the substantive law which is the basis of plaintiff's cause of action.

In agreeing with the trial court, the majority is laboring under the misconception that the issue in this case merely involves a procedural aspect of the trial. However, the issue in this case really involves the essential elements of plaintiff's cause of action. The issue must there-

fore be controlled by the substantive law of Indiana and not the procedural law of Illinois.

In Indiana, the requisite elements of a negligence action are (1) existence of a duty on the part of a defendant in relation to the plaintiff, (2) failure of the defendant to conform his conduct to a standard of care demanded by such duty, and (3) injury to the plaintiff proximately resulting from such failure. (*Old Town Development Co. v. Langford* (Ind. App. 1976), 349 N.E.2d 744, 781.) Plainly, freedom from contributory negligence is not an element of the cause of action, and it therefore cannot be grafted on as an element of the cause of action by an Illinois procedural rule dealing with burden of proof. Moreover, it is axiomatic that in Illinois, the party asserting a claim or defense has the burden of proving all the essential elements of the claim or defense. Here, the essential elements of plaintiff's claim do not include freedom from contributory negligence. It was defendants who claimed that plaintiff was guilty of contributory negligence. If defendants had not raised it, contributory negligence would not have been an issue in the case. Thus, even under Illinois procedural rules, it was defendants who had the burden of proving that plaintiff was guilty of contributory negligence since they raised it as an issue. Common sense tells us that a party cannot raise an issue and then require the other party to disprove it.

The majority relies mainly on *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 404 N.E.2d 265. In *Babcock,* the court held that under Michigan law the burden of proof on contributory negligence was a procedural law designed to regulate the conduct of the trial. *Babcock* did not involve the law of Indiana, and it did not involve the essential elements of a negligence action under Indiana law. Therefore, I do not find *Babcock* applicable. Moreover, to the extent that the rationale in *Babcock* is contrary to what is expressed here, I cannot accept the rationale in *Babcock.*

For the reasons stated, I believe the trial court erred when it required plaintiff to prove that he was free from contributory negligence before he could recover. Freedom from contributory negligence was not an essential element of plaintiff's cause of action, and he should not have been required to prove that which was not part of his claim. Since it was defendants who claimed that plaintiff was guilty of contributory negligence, they should have been required to prove it.

Accordingly, I believe plaintiff in this case was denied a fair trial. I would reverse the judgments in favor of defendants and remand the case for a new trial as to all defendants.